# EXHIBIT 1

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HO WAN KWOK, *et al.*,[1] | ) | Case No. 22-50073 (JAM) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |

**JOINT DEFENDANTS' LIMITED OBJECTION TO THE TRUSTEE'S MOTION FOR ENTRY OF ORDER: (I) SUPPLEMENTING, AMENDING, AND SUPERSEDING (A) ORDER DIRECTING PARTIES TO MEDIATION, APPOINTING THE HONORABLE JAMES J. TANCREDI AS MEDIATOR, AND AMENDING ORDER APPROVING PROCEDURES APPLICABLE TO AVOIDANCE CLAIM ADVERSARY PROCEEDINGS; AND (B) ORDER AMENDING ORDER DIRECTING PARTIES TO MEDIATION, APPOINTING THE HONORABLE JAMES J. TANCREDI AS MEDIATOR, AND AMENDING ORDER APPROVING PROCEDURES APPLICABLE TO AVOIDANCE CLAIM ADVERSARY PROCEEDINGS TO FACILITATE CONSENSUAL PRE-LITIGATION AND PRE-APPEARANCE MEDIATION; AND (II) APPROVING INTERVENTION OF APPROPRIATE AVOIDANCE DEFENDANTS IN OMNIBUS ALTER EGO ACTIONS AS TO ALTER EGO CLAIMS AGAINST SPECIFIED ALTER EGO DEFENDANTS [ECF NO. 4628]**

---

[1] The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

The thirty-one (31) adversary proceeding defendants identified on the attached <u>Exhibit A</u> (the "<u>Joint Defendants</u>"), by and through their undersigned counsel, hereby submit this joint limited objection (the "<u>Objection</u>") to Luc A. Despins', as chapter 11 trustee (the "<u>Trustee</u>") for the estate of Debtor Ho Won Kwok (the "<u>Debtor</u>"), *Motion for Entry of Order: (I) Supplementing, Amending, and Superseding (A) Order Directing Parties to Mediation, Appointing the Honorable James J. Tancredi as Mediator, and Amending Order Approving Procedures Applicable to Avoidance Claim Adversary Proceedings; and (B) Order Amending Order Directing Parties to Mediation, Appointing the Honorable James J. Tancredi as Mediator, and Amending Order Approving Procedures Applicable to Avoidance Claim Adversary Proceedings to Facilitate Consensual Pre-Litigation and Pre-Appearance Mediation; and (II) Approving Intervention of Appropriate Avoidance Defendants in Omnibus Alter Ego Actions as to Alter Ego Claims Against Specified Alter Ego Defendants* [ECF No. 4628] (the "<u>Amended Procedures Motion</u>") and the Trustee's *Revised Proposed Order* granting the same [ECF No. 4682] (the "<u>Proposed Order</u>"), including, *inter alia*, the Amended Avoidance Litigation and Mediation Procedures attached to the Proposed Order as Exhibit A (the "<u>Litigation and Mediation Procedures</u>") and the Discovery Procedures in Avoidance Actions attached to the Litigation and Mediation Procedures as Exhibit 4 (the "<u>Discovery Procedures</u>").[2]  In support of the Objection, the Joint Defendants respectfully state as follows:

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Proposed Order, the Litigation and Mediation Procedures, or the Discovery Procedures, as applicable.

## PRELIMINARY STATEMENT

The Joint Defendants acknowledge the great burden presented to the Court by the management and adjudication of hundreds of pending Avoidance Actions commenced by the Trustee in this case,[3] and wish to cooperate in the implementation of procedures that streamline the Court's involvement in discovery and facilitate the mediation process, while at the same time preserving important rights and safeguards built into the Federal Rules of Civil Procedure (the "Federal Rules") as incorporated by the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The Joint Defendants have accordingly made reasonable compromises to various provisions of the Proposed Order and narrowed their areas of disagreement with the Trustee in an attempt to reach a consensus.  Despite these concessions, the Trustee persists in his effort to rewrite, on a nearly wholesale basis, the Federal Rules for his convenience, and in many respects in derogation of the Avoidance Defendants' rights that are provided for in the Federal Rules.  Accordingly, the Joint Defendants make this limited objection to the Amended Procedures Motion and the Proposed Order.

## LIMITED OBJECTION

**A.      Objections to the Discovery Procedures Governing Who May Participate in Discovery and When**

The Joint Defendants believe that the proposed Discovery Procedures impermissibly limit discovery the Avoidance Defendants would otherwise be entitled to under the Federal Rules in important ways that are prejudicial to the Avoidance Defendants while providing a strategic advantage to the Trustee.  One example is the Trustee's intentional carve-out of entities against

---

[3] According to the Trustee, to date, he has filed approximately four hundred (400) Avoidance Actions against nearly five hundred (500) Avoidance Defendants.  *See* Amended Procedures Motion, ¶ 15.

whom he has not yet obtained an alter ego determination from the subject matter list in Paragraph 2 of the Discovery Procedures.

In Paragraph 2 of the Discovery Procedures, the Trustee proposes to populate Data Rooms with documents in the possession of the Trustee that relate to only a small subset of alleged transferor entities. The Trustee identifies ten (10) alleged alter ego entities[4] for which he will provide documents, all of which are entities against which he has already obtained alter ego determinations. The Trustee has not included in Paragraph 2, *inter alia*, **the over forty (40) "partially stayed" transferors.** Moreover, as of this moment, the Trustee does not propose a Data Room for an entity known as "Buck Esq. LLC," which the Trustee alleges was a conduit for the Debtor rather than an alter ego.[5]

Because many Avoidance Defendants are alleged to have received pre-petition fraudulent transfers and/or post-petition transfers from multiple alleged alter ego transferors (some that have been assigned their own Data Room, and some that have not), the proposed "streamlined" discovery will take place on multiple tracks, with separate timelines, and hundreds of Avoidance Actions will engage in discovery on a piecemeal basis. The Avoidance Defendants will thus be forced to defend the lawsuits filed against them by the Trustee first with respect to only a subset of transfers and transferors at issue in their cases. The procedures that the Trustee proposes under the auspices of efficiency will instead result in more complexity and confusion for the Court and

---

[4] These entities are Golden Spring (New York) Limited; Lamp Capital LLC; Leading Shine NY Ltd.; Hudson Diamond NY LLC; Lexington Property and Staffing, Inc.; HCHK Technologies, Inc.; HCHK property Management, Inc.; Greenwich Land LLC; New Dynamic Development Limited; and Taurus Fund LLC.

[5] This entity is connected to alleged transfers to several Avoidance Defendants, including without limitation Putnam's Landscaping, LLC, LaBarbiera Custom Homes, LLC, The Vision Group, Inc. d/b/a Bang and Olufsen, Rovello Electric, Inc., and B&H Foto & Electronics Corp. Although the Trustee has agreed to discuss discovery issues relating to this entity, such discussion has not yet occurred, and the Avoidance Defendants must object to this omission.

the Avoidance Defendants.  For instance, the Trustee's proposal raises the following issues and questions:

- The Avoidance Defendants will be forced to issue multiple rounds of Written Discovery Requests, and the Trustee will be forced to issue multiple rounds of responses and objections—first for the ten (10) entities identified in Paragraph 2 and later for the forty (40) plus additional transferor entities.

- The Avoidance Defendants may be forced to depose witnesses on multiple occasions, because only later will they be made aware of documents and issues related to the non-listed transferor entities.

- It is unclear whether the proposed discovery procedures will immediately and automatically apply to the Specified Alter Ego Defendants if and when the Trustee obtains an alter ego determination against those entities, or whether something more will be required to trigger application of the procedures.

- If an alter ego determination is obtained against an additional transferor entity, will a new 300-day discovery timeline start running, such that there are multiple discovery timelines for each case with separate deadlines and cutoffs?

The Joint Defendants submit that there is no benefit to conducting discovery in such a haphazard and disjointed fashion, and that it will significantly increase the burdens on the Avoidance Defendants to obtain relevant information necessary to defend the Trustee's claims.

Nevertheless, the Trustee is incentivized to limit discovery in this manner and impede the Avoidance Defendants' ability to defend against the Trustee's claims and obtain discovery related to all alleged transferors.  The Trustee's apparent strategy is to limit the Avoidance Defendants' access to relevant information so that he can undermine their ability to evaluate and test evidence related to purported alter egos at any point prior to when he obtains a favorable determination in his separate adversary proceedings.  For the same reason, the Trustee has only proposed intervention procedures for the Specified Alter Ego Defendants.  He has omitted from that list certain entities for which counsel has not appeared, so that he can obtain default judgments against those non-appearing defendants that he will then argue should bind the Avoidance Defendants.

If the Trustee wishes to proceed with litigation, the Trustee should not be permitted to effectively turn a single adversary proceeding into multiple lawsuits with competing deadlines for discovery. Instead, the Trustee should be required to create and populate Data Rooms for each and every alleged transferor entity at issue in the Avoidance Actions, and nothing in the Discovery Procedures should limit the Avoidance Defendants' ability to propound and obtain discovery relating to each and every one of those entities.

### B. Objection to the Discovery Procedures Excusing the Trustee from Meeting His Obligations Under Federal Rule 26(a)

Paragraph 5(b) of the Trustee's Discovery procedures provides as follows:

> No later than fourteen (14) days after the Discovery Start Date, the parties shall exchange initial disclosures pursuant to Civil Rule 26(a)(1) ("Automatic Disclosures"), *provided, however*, any obligation of the Trustee to produce documents as part of the Trustee's Automatic Disclosures shall be satisfied by the Trustee's granting of access to the Avoidance Defendant to any relevant Data Rooms.

This provision may appear reasonable, but under the particular circumstances of this case, it is not. Despite several inquiries, the Joint Defendants still do not know the nature and volume of the documents the Trustee intends to produce, nor their production format. Despite omitting this critical information, the Trustee seeks to impose discovery procedures and deadlines on the Joint Defendants. Federal Rule 26(d)(1) provides that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." Federal Rule 26(f), in turn, requires the parties to mutually develop a discovery plan to the extent possible. The rationale for these provisions is clear – it allows the parties to have a sense of the nature and scope of the potential discovery in a matter, as well as potential disputes and pitfalls, prior to agreeing to discovery procedures and deadlines. The

Trustee seeks to flip this process by having the Joint Defendants agree to his discovery plan without having any sense of the nature and amount of the documents and information the Trustee is about to disclose to them.

Accordingly, the Joint Defendants request that the Trustee make his initial disclosures under Federal Rule 26(a) for each adversary case *prior* to the entry of any order governing discovery procedures, and that the Avoidance Defendants be allowed to reserve their rights that the Trustee has satisfied his obligation to produce documents as part of his Automatic Disclosures by his granting of access to the Avoidance Defendant to any relevant Data Rooms.

### C.    Objections to the Discovery Procedures Governing the Depository

As referenced in Section (A) above, the Trustee proposes to establish an e-discovery depository (the "Depository"), with Data Rooms containing non-privileged documents in his possession relating to certain subject matters. *See* Discovery Procedures, ¶ 2. There is critical information missing from the proposed Depository that should be supplied, and there are tweaks that should be implemented.

### 1.    All Data Rooms Should Be Further Organized by, *inter alia*, the Source(s) of Documents Housed Therein

First, the Trustee should segregate his productions by the source(s) of those documents. For example, if the Trustee's production comprises documents concerning Lamp Capital obtained from three separate banks, the production from each bank should be placed into its own subfolder. This benefits everyone, as the Avoidance Defendants will not have to ask the Trustee where certain documents came from, and the Trustee will not have to field potentially duplicative inquiries from multiple Avoidance Defendants. Furthermore, documents in the Data Room should be categorized logically, for example: (i) chronologically; (ii) by document custodian; (iii) by document request;

(iv) by subject matter.  Moreover, each Data Room should contain an index of the documents it contains.

> ### 2. The "Catch All" Data Room Should Be Further Organized Based on the Nature of the Documents Housed Therein

Second, Paragraph 2 of the Discovery Procedures describes twelve (12) Data Rooms containing categories of documents that will be produced to the Avoidance Defendants, including a "catch all" category described as "[t]he Trustee's allegations in Avoidance Complaints asserting claims for actual fraudulent transfer under section 548 of the Bankruptcy Code and/or N.Y. Debtor & Creditor Law regarding the Debtor's 'shell game' of using alter egos and nominees to hold title to his assets and conduct his affairs."  "Catch all" should not mean "document dump."  The Trustee must identify with greater specificity the nature and amount of the documents he will produce in that category.  The Trustee has been reviewing these documents for years, but the Avoidance Defendants are about to review them for the first time (as discussed further below).  Given the nature of the Trustee's allegations in the approximately four hundred (400) Avoidance Actions, and the extensive proceedings therein and in this bankruptcy case, this category could conceivably include documents related to hundreds of parties and thousands of transactions.  The Avoidance Defendants require more specific categorization with regards to the nature and volume of the documents the Trustee intends to produce in this category to determine whether further subcategorization is required, lest the Trustee produce thousands of uncategorized documents.

> ### 3. There Should Be a Separate Data Room for Copies of Subpoenas, Document Requests, and All Formal and/or Informal Responses and Subsequent Communications Relating Thereto

Third, the Trustee should create a separate Data Room for copies of subpoenas and document requests to third parties, as well as any formal or informal responses and subsequent communications shedding light on the scope of production by those parties.  The Trustee has

already indicated he is amenable to providing copies of his requests. *See* Discovery Procedures, n.2. He should just provide that information upfront to all Avoidance Defendants rather than putting the onus on the Avoidance Defendants to individually request it.[6] Further, while the Trustee has not proposed to provide responses to his requests, there is no good reason why that information should be excluded. After all, for the Avoidance Defendants to understand what is in each production, they must know not only what was requested but also what the producing party agreed (or refused) to provide. Further, if the Trustee and producing party subsequently agreed to narrow the scope of what was requested in an effort to reach consensus, that is critical information for the Avoidance Defendants to know. This information will also streamline further third-party discovery. Once the Avoidance Defendants learn what the Trustee previously requested, and what a third party ultimately agreed to produce, they can then avoid seeking duplicative information from that same party.

> 4. **The Avoidance Defendants Need More Information Regarding the Nature, Amount, and Format of the Documents to Be Uploaded to the Depository**

Fourth, in footnote 2 of Paragraph 2 of the Discovery Procedures, the Trustee states that "[d]ocuments shall be uploaded to the data room in the form produced to the Trustee, including any available metadata." Greater specificity is required as to the meaning of this statement. The Trustee's standard Bankruptcy Rule 2004 examination subpoena (*see, e.g.*, ECF 4252) set forth extensive guidelines for the production of documents, requiring deponents to, among other things, (i) produce electronically stored documents as single page TIFF files with certain file naming

---

[6] Notably, the Trustee states that he makes no representations regarding the accuracy, completeness, and/or authenticity of documents or information therein. This highlights the need for the Avoidance Defendants to obtain information from the Trustee regarding document preservation and collection efforts so that the Avoidance Defendants can test whether the documents that the Trustee relies on in asserting his claims are (i) accurate; and (ii) complete.

protocols and bates numbering;  (ii) produce a "Concordance Data File," and a "Concordance Image OR Opticon Cross Reference File," both likely litigation management software that many counsel for the Avoidance Defendants may not possess; and (iii) produce extracted metadata in the form of a "Concordance complaint load file (.dat)."

It is unknown how many Bankruptcy Rule 2004 or deposition subpoena respondents produced documents in the above requested format, and as discussed above, despite several discussions with the Trustee regarding discovery procedures, the Joint Defendants still do not have a good sense of the nature, amount and format of the documents in the Trustee's possession.  The Trustee needs to state, with reasonable specificity, which documents will be produced in the above-described format and which documents will be produced in native format (which is preferred), so that the Avoidance Defendants can reasonably prepare for their review of the documents, or raise objections if need be.

Metadata is also necessary for the Avoidance Defendants to efficiently search and accurately analyze documents.  The load file should provide original metadata from time of collection, which is important if files are being renamed for the Data Room or otherwise altered from their original format.  Additionally, whatever platform the Trustee uses for the Data Room must allow for mass downloads, including original metadata.

> **5.    Paragraph 4(f) of the Discovery Procedures Is Unnecessary and Creates Artificial Boundaries**

Fifth, the Joint Defendants object to the proposed term in the Discovery Procedures that would provide as follows:

> Counsel that obtain documents or information through Discovery Proceedings in any Avoidance Action may only share such documents and information with the client(s) as to which such Discovery Proceedings are conducted.  For the avoidance of doubt, counsel that obtain documents or information through Discovery Proceedings as to one client may not share such documents or information with any

> other individuals or entities (including counsel's other client(s), unless such other clients are independently entitled to access the documents or information in accordance with these Discovery Procedures).

Discovery Procedures, ¶ 4(f).  This provision is not only unnecessary, as all counsel for the Avoidance Defendants are already bound by and required to comply with the Protective Order, but would create artificial boundaries, unjustifiably preventing counsel for the Joint Defendants from working collaboratively as a group that shares common issues and interests, and with greater efficiency in the expenditure of time and resources.  The Court should not approve a discovery procedure that serves no purpose other than to impair the Avoidance Defendants from working as a joint defense group.

To the extent that it goes so far as to prevent counsel even from sharing information obtained through Discovery Proceedings with his or her own other clients, even if otherwise in full compliance with the Protective Order, the provision could also impede counsel from fulfilling their mandatory obligations to those other clients under applicable rules of ethics.  Specifically, Rule 1.4 of both the ABA Model Rules of Professional Conduct and the Connecticut Rules of Professional Conduct require counsel to communicate and impart to his or her client any material information that is reasonably relevant to the representation or handling of the matter at hand.  *See also Bremer Bus. Fin. Corp. v. Dorsey & Whitney, LLP (In re SRC Holding Corp.)*, 364 B.R. 1, 44 (Bankr. D. Minn. 2007), *rev'd on other grounds,* 553 F.3d 609 (8th Cir. 2008) ("It is the undoubted duty of an attorney to communicate to his client whatever information he obtains that may affect the interests of his client in respect to matters entrusted to him.").  If defense counsel obtains documents or information in the course of discovery in one Avoidance Action that potentially impacts the rights or defenses of a separate client in another matter, counsel must be permitted to

share that information with the other client so long as counsel otherwise complies with the terms of the Protective Order applicable to these cases.

> **6.      The Proposed Requirement Limiting Access to the Depository to Counsel Who Have Certified Compliance with the Discovery Procedures is Unnecessary**

Sixth, the Joint Defendants object to the provision in the Discovery Procedures limiting access to the Depository to attorneys for Avoidance Defendants who have "individually certified compliance" with the Discovery Procedures "in a form reasonably acceptable to the Trustee." *See* Discovery Procedures, ¶ 4 and n.4.  This requirement for attorney access to the Depository is entirely unnecessary, as the Discovery Procedures will have been implemented by order of this Court in the main case and expressly made applicable, binding, and subject to compliance by all appearing counsel in every Avoidance Action.  There simply is no need for defense counsel, who are already bound by this Court's orders, to engage in an utterly redundant and pointless exercise to gain access to the Depository.

> **7.      Any Language Protecting the Trustee from Inadvertent Waiver Should Be Reciprocal**

Finally, the proposed Discovery Procedures include two separate paragraphs providing that inclusion by the Trustee of documents in the Depository shall not operate as a waiver of any privilege applicable to such documents.  *See* Discovery Procedures, ¶¶ 3(c), 8.  There is no apparent reason for this redundancy.  But in any event, any order protecting parties to litigation from inadvertent waiver should be reciprocal and comply with Federal Rule of Evidence 502(d).  Any order should strike the Trustee's proposed paragraphs 3(c) and 8 and include instead the following paragraphs:

> [X].      The production of documents, electronically stored information ("ESI"), or
>
> information that is subject to a claim of privilege or work product protection, whether

11

inadvertent or otherwise, is not a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding. This Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d). The provisions of Federal Rule of Evidence 502(b) do not apply.

[Y].    Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness or segregation of privileged or otherwise protected information before production.

### D.    Objections to the Discovery Procedures Governing Depositions

The Joint Defendants object to the Discovery Procedures to the extent they can or may limit the scope of depositions and specifically reserve the right for each Avoidance Defendant to ask questions germane to its particular Avoidance Action. Further, while the Joint Defendants do not object to meeting and conferring to obtain reasonable adjustments to the time allocated for each deposition, each must have the right to (i) request a reasonable amount of time to examine a deponent; and (ii) seek an order from the Court if a resolution cannot be reached through the meet and confer process.

The Joint Defendants' position is consistent with Federal Rule 30(d)(1), which allows the Court to permit additional time or address other circumstances that impede or delay the examination. "As noted in the Advisory Committee Notes to Rule 30, relevant considerations to granting an extension of time beyond the seven hours allowed include '[i]n multi-party cases, the need for each party to examine the witnesses.'" *New Colt Holding Corp. v. RJG Holdings of Florida, Inc.*, No. Civ. 302CV173PCD, 2003 WL 22326978 (D. Conn. 2003) (granting extension of time for depositions when the existence of multiple defendants warranted further deposing of

expert witness); *see also Soft Drink, Brewery Workers & Delivery Emps., Indus. Emps., Warehousemen, Helpers & Misc. Workers, Greater N.Y. & Vicinity, Loc. Union No. 812 v. Ulrich*, No. 17 Civ. 137, 2021 WL 2227921, at *4 (S.D.N.Y. June 1, 2021) (Rule 30(d)(1) would permit a witness being deposed in two different cases to be questioned for a total of 14 hours). The rights of the Avoidance Defendants to adequately and fulsomely depose witnesses should not be abridged by the Trustee's interest in limiting his discovery burdens, or to forfeit discovery rights because of the multitude of Avoidance Defendants who may need to examine the same deponent.

Moreover, Paragraph 10 of the Discovery Procedures requires that:

> Upon noticing any deposition, the noticing party must provide at least twenty-one (21) days advance written notice (an "Avoidance Deposition Notice") to the Trustee and to all Avoidance Defendants by email to the Trustee's and the Avoidance Defendants' appearing counsel, or, as to Avoidance Defendants for which counsel has not appeared, by U.S. mail. . . . Upon the request of any Avoidance Defendant wishing to issue an Avoidance Deposition Notice, the Trustee shall furnish a list of Avoidance Defendants and their appearing counsel (including email addresses where available) or mailing address.

With approximately four hundred (400) Avoidance Actions pending on the docket and nearly five hundred (500) Avoidance Defendants, it is unduly burdensome for each individual Avoidance Defendant to be required to serve hundreds of notices of deposition for each deposition, including, no doubt, many such notices by U.S. Mail. Instead, upon receipt of a notice of deposition, the Trustee should be the party required to serve the notice on all Avoidance Defendants and their appearing counsel. The Trustee already has the list and contact information for all Avoidance Defendants and appearing counsel, he works at a law firm with nearly 1,200 lawyers and accompanying support staff,[7] and he therefore has the resources, and is in a much better position,

---

[7] *See* https://tinyurl.com/yvft9ha3, as viewed on October 10, 2025.

to issue mass notices as contemplated by the Order.  In contrast, many Avoidance Defendants are represented by much smaller law firms that lack the resources to issue notices to hundreds of recipients.

**E.     Objections to the Discovery Procedures Governing Written Discovery Requests Served by the Avoidance Defendants**

The Joint Defendants also object to the Discovery Procedures' limitations on the Avoidance Defendants' Written Discovery Requests.  Specifically, Paragraph 6 of the Discovery Procedures states as follows:

> Notwithstanding anything herein to the contrary, any Avoidance Defendants wishing to serve Written Discovery Requests on the Trustee shall, prior to service: (i) make diligent efforts to obtain any documents and information sought from the Depository; (ii) exclude from Written Discovery Requests any requests for documents and information available through the Depository; (iii) meet and confer with the Trustee regarding the availability of documents and information in the Depository and the contemplated Written Discovery Requests and to discuss other Avoidance Defendants that may be undertaking discovery with respect to the same or similar subject matter; and (iv) make reasonable efforts to coordinate with other Avoidance Defendants in an effort to avoid duplicative or cumulative discovery and to serve joint requests where reasonably possible, including, by way of example, by service of common interrogatories).[6]  The Trustee reserves all rights to object to such Written Discovery Requests, including without limitation on the grounds that the requests, in the aggregate, are duplicative and/or overly burdensome on the Trustee.  Any disputes as to the foregoing shall be resolved by the Court upon appropriate motion.
>
> [6] For the avoidance of doubt, the obligation to coordinate with other Avoidance Defendants shall apply only when other Avoidance Defendants are known to the Avoidance Defendant subject to the obligation, including, without limitation, following the Trustee advising that other Avoidance Defendants are seeking the same or similar discovery.

Discovery Procedures, ¶ 6.

First, although the Joint Defendants do not object to the notion that the Avoidance

Defendants should undergo reasonably diligent efforts to review the Depository prior to seeking additional information or documents from the Trustee through Written Discovery Requests, the Joint Defendants object to romanettes (i) and (ii) of Paragraph 6 of the Discovery Procedures to the extent those provisions place the burden of knowing the full contents of the Depository on the Avoidance Defendants and suggest some notion of wrongdoing on the part of an Avoidance Defendant should it request material that has already been uploaded to the Depository.

The Joint Defendants do not yet know the volume of data that the Trustee plans to upload to the Depository, but presumably, and given the nature of this case and the descriptions of the different Data Rooms, it will be extremely voluminous (and could consist of tens or even hundreds of thousands of documents). Moreover, if the Depository and Data Rooms are not further organized by, *inter alia*, the source(s) of the documents housed therein, as discussed in Section (C)(1) above, the Depository will likely be difficult to navigate. Should the Court approve and enact the Discovery Schedule set forth in the Discovery Procedures, each Avoidance Defendant will have only ninety (90) days after its respective Discovery Start Date to serve its initial round of Written Discovery Requests. Placing the burden on the Avoidance Defendants to review the Depository with a fine-toothed comb within this ninety (90) day period to ensure that they do not request duplicative information from the Trustee would be unfair and prejudicial, particularly when compared to the minimal burden the Trustee (who is or should be more familiar with the contents and organization of the Depository) would need to undergo in responding to a potentially duplicative Written Discovery Request (*i.e.*, simply referring the requesting Avoidance Defendant to the relevant Data Room(s)). Furthermore, requiring the Trustee to direct the requesting Avoidance Defendant to the relevant Data Room(s) is entirely consistent with the Trustee's existing obligations under the Federal Rules. *See* Fed. R. Civ. P. 33(d) ("If the answer to an interrogatory

may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could…."); Fed. R. Civ. P. 34(b)(2)(E)(i) (if not producing documents as they are kept in the usual course of business, requiring the producing party to "organize and label [the documents] to correspond to the categories in the request").

Second, and relatedly, the Joint Defendants object to romanette (iii) of Paragraph 6 of the Discovery Procedures to the extent it makes meeting and conferring with the Trustee regarding (a) the availability of documents and information in the Depository; and (b) other Avoidance Defendants that may be undertaking discovery with respect to the same or similar subject matter, a *pre-requisite* to serving Written Discovery Requests.  To be clear, the Joint Defendants do not object to meeting and conferring with the Trustee on these subjects *after* serving Written Discovery Requests.  However, in many cases, if the Trustee responds to a Written Discovery Request by indicating where in the Depository the requesting Avoidance Defendant can find the responsive information or documents, or by informing the requesting Avoidance Defendant that such information or documents have already been requested by another Avoidance Defendant and was or will be produced or uploaded to the Depository, such meet and confer will be unnecessary.  On the other hand, if each and every Avoidance Defendant in the hundreds of pending Avoidance Actions (other than those that are stayed or engaged in mediation) is required to meet and confer with the Trustee *prior* to serving any Written Discovery Requests (which all must do within ninety (90) days of their respective Discovery Start Date per the proposed Discovery Schedule), it will

16

only serve to overload both the Avoidance Defendants and the Trustee with potentially unnecessary meet and confer sessions.

Third, although the Joint Defendants do not object to making reasonable efforts, where interests align and doing so is feasible, to coordinate with other Avoidance Defendants to avoid duplicative or cumulative discovery, the Avoidance Defendants object to romanette (iv) of Paragraph 6 of the Discovery Procedures to the extent it would impose any actual duty on the Avoidance Defendants to coordinate their discovery efforts and/or serve joint Written Discovery Requests. The Avoidance Defendants appreciate that romanette (iv) states only that the Avoidance Defendants should "serve joint requests where reasonably possible," and that "the obligation to coordinate with other Avoidance Defendants shall apply only when other Avoidance Defendants are known to the Avoidance Defendant." *See* Discovery Procedures, ¶ 6(iv) and n.6. However, although many of the Avoidance Defendants are similarly situated in certain respects, and the Joint Defendants, as demonstrated by this Objection and previous joint briefing submitted to this Court, intend to work collectively and collaboratively on certain issues, each Avoidance Defendant's case is unique, and putting any obligation, however qualified, on the Avoidance Defendants to coordinate their Written Discovery Requests is inappropriate. At the very least, each Avoidance Defendant must be permitted to serve Written Discovery Requests that are germane to its particular Avoidance Action.

Finally, the Joint Defendants object to the Discovery Procedures' limitation on an Avoidance Defendant's ability to serve "supplemental Written Discovery Requests and subpoenas" following its service of initial Written Discovery Requests to the Trustee and subpoenas to third parties, but before the deadline for the completion of all fact discovery. Specifically, Paragraph 5(c) of the Discovery Procedures states that "[a]ny initial [Written Discovery Requests], . . . as

well as initial subpoenas to third parties, shall be served no later than ninety (90) days after the Discovery Start Date." Despite the fact that the Trustee's proposed deadline for the completion of fact discovery is not until three hundred (300) days after the Discovery Start Date, *see* Discovery Procedures, ¶ 5(d), Paragraph 5(c) of the Discovery Procedures further states that Avoidance Defendants "may serve supplemental Written Discovery Requests and subpoenas, consistent with the other dates and deadlines set forth herein, **based on newly discovered information or developments in the litigation**." (emphasis added).

The pre-requisite that supplemental Written Discovery Requests and subpoenas may only be served based on "newly discovered information or developments in the litigation" is not grounded in the Federal Rules, and the Avoidance Defendants should not be so limited. Unless otherwise ordered by the Court, the Federal Rules allow the Avoidance Defendants to serve up to twenty-five (25) written interrogatories. *See* Fed. R. Civ. P. 33. Moreover, the Federal Rules place no default limitation on the number of requests for admission or production requests that the Avoidance Defendants may serve. *See* Fed. R. Civ. P. 34 and 36. Litigation is fluid, and strategies change. Prior to the expiration of the fact discovery deadline otherwise set by the Discovery Procedures and/or by the Court, the Avoidance Defendants should be permitted, as the Federal Rules expressly permit, to freely serve supplemental Written Discovery Requests (so long as they do not exceed the number of permitted written interrogatories absent court approval) without having to articulate their need for supplemental Written Discovery Requests to the Trustee, let alone having to neatly fit such need into the vague boxes of necessity based on "newly discovered information" or "developments in the litigation."

### F.  Objections to the Trustee's Use of Categorical Privilege Logs

The Court also should reject the Trustee's proposal to produce only categorical privilege logs.  *See* Discovery Procedures, ¶ 3.   Categorical privilege logs do not comply with the requirements of the Local Rules of Civil Procedure in this District (the "Local Rules").  *See* L. Civ. R. 26(e).  They also would permit the party asserting a privilege – and therefore withholding otherwise relevant evidence – to obscure the nature of documents being withheld in violation of the requirement that a party claiming privilege describe them "in a manner that . . . will enable other parties to assess the claim" of privilege.  Fed. R. Civ. P. 26(b)(5)(A)(ii).

It is the burden of a party claiming privilege to establish that a privilege applies, and that burden "is demanding."  *Jansson v. Stamford Health, Inc.*, 312 F. Supp. 3d 289, 293 (D. Conn. 2018).  In the American system, the "primary assumption" is that "'there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional[.]'"  *Id.* at 292 (quoting *United States v. Bryan*, 339 U.S. 323, 331 (1950)).

Whether a party claiming privilege can meet this burden depends on the production of an adequately detailed privilege log that is sufficient to enable the party seeking discovery to contest the claim of privilege.  *Bolorin v. Borrino*, 248 F.R.D. 93, 95 (D. Conn. 2008) (citing *Horace Mann Ins. Co. v. Nationwide Mut. Ins. Co.*, 240 F.R.D.44, 47 (D. Conn. 2007)); *see* Fed. R. Civ. P. 26(b)(5)(A)(ii).   "The requirement that detail be provided operates to discourage pro forma, half-baked, dilatory, and even jocular assertions of privilege."  *Horace Mann Ins.*, 240 F.R.D. at 47.

Local Rule 26(e) reinforces these requirements, consistent with Federal Rule 26(b)(5).[8] That Local Rule requires, for any claim of privilege or work product protection, a privilege log containing the following information: (1) the type of document being withheld; (2) its general

---

[8] Local Rule 26 is made expressly applicable by D. Conn. Bankr. L. R. 7026-1.

subject matter; (3) the date of the document; (4) the author; and (5) each recipient.  L. Civ. R. 26(e).  Categorical privilege logs cannot meet these requirements, because a party using a categorical log can group documents of different types, with different dates, authors, and recipients, and with the only commonality being a similar subject matter.

Not only would categorical logs unfairly obscure the nature of the information being withheld by the Trustee, and make it more difficult for opposing parties to assess his claims of privilege and challenge them in violation of the rules, *see* Fed. R. Civ. P. 26(b)(5), but using such logs would likely multiply discovery disputes and impose additional burdens on the Court.  Indeed, Federal Rule 26(b)(5) requires detailed privilege logs precisely because requiring a withholding party to provide such information "'should reduce the need for *in camera* inspection of the documents.'"  *Jansson*, 312 F. Supp. 3d at 294 (quoting Advisory Committee Note, 1993 Amendment to Rule 26).

Nor will the Trustee face undue burden if he is required to prepare privilege logs that comply with Local Rule 26(e), just as every other litigant must do in this District.  The Trustee must review potentially privileged documents regardless of the type of privilege log he is required to produce, and once he has identified a document as privileged, the bibliographic information relating to the document can be generated automatically, assuming he is using the same discovery technology that all other firms of similar size and sophistication of that of the Trustee's firm are using today.

Moreover, and putting aside the mechanics of how the Trustee proposes to substantiate the claimed privileges, the Trustee's proposal to withhold those documents that predate his appointment is highly problematic, because protecting those documents is unwarranted given his legal theories.  The Trustee's theory of the case for each of his Avoidance Actions is that alleged

non-debtor alter egos made fraudulent or unauthorized transfers to Avoidance Defendants as part and in furtherance of Kwok's overall "shell game." If the Trustee is right, and these alleged alter egos had no legitimate business beyond facilitating Kwok's fraud, then most, if not all, purportedly privileged documents created before the Trustee's appointment would be subject to disclosure under the crime-fraud exception. *See In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1038 (2d Cir. 1984) ("It is well-established that communications that otherwise would be protected by the attorney-client privilege or the attorney work product privilege are not protected if they relate to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct."). While the issue may not yet be ripe for adjudication because the Trustee has not yet provided a privilege log, the Joint Defendants alert the Court to it now, as the Trustee should not be able to use Kwok's fraud as a basis to sue the Avoidance Defendants but then shield communications and documents reflecting that fraud from disclosure where doing so may adversely impact his case.

### G.    Objections to the Intervention Procedures

The Joint Defendants also object to the Proposed Order and the Litigation and Mediation Procedures because they fail to adequately describe the procedures for the Avoidance Defendants to intervene in the Omnibus Alter Ego Actions. While the Litigation and Mediation Procedures contemplate that each Avoidance Defendant will file a "Notice of Intervention" in the Omnibus Alter Ego Action(s) that sets forth "the specific Alter Ego Claims as to which the Avoidance Defendant seeks to intervene[,]" it otherwise provides little guidance on the procedures now sought by the Trustee.

Among other things, the Litigation and Mediation Procedures fail to describe whether the Avoidance Defendants will be permitted to plead and assert claims and defenses in response to the

claims asserted in the Omnibus Alter Ego Actions, and, if so, whether that permission will be proscribed in some manner.  Moreover, the Litigation and Mediation Procedures do not identify how long the Avoidance Defendants will have to plead once a Notice of Intervention has been filed.  Given that the Trustee reserves the right to challenge the scope of an Avoidance Defendant's intervention once the notice is filed, failing to identify a relevant timeframe to plead, along with a corresponding triggering event, will only add confusion and inefficiency to the process – two outcomes that the Litigation and Mediation Procedures should seek to avoid.

The lack of detail concerning the intervention procedures poses other risks for the Avoidance Defendants as well.  Take, for example, the subtle difference in how intervention is framed in the Amended Procedures Motion versus how it is framed in the Litigation and Mediation Procedures.  In the first instance, the Amended Procedures Motion, which references Federal Rule 24(b) as the basis for intervention,  states: "[t]o be clear, the right to intervene should be limited to Avoidance Defendants that possess standing to dispute these matters (*i.e.*, where the Trustee has asserted that transfers were made to the Avoidance Defendants via one or more Specified Alter Ego Defendants)."  On the other hand, the Litigation and Mediation Procedures provide that: "[t]he intervening Avoidance Defendant's right to participate in proceedings in Omnibus Alter Ego Actions shall be limited to those claims that the Avoidance Defendant has identified and has standing to dispute."  Although subtle, this variation, when taken together with other infirmities contained in the Proposed Order – such as the Discovery Procedures, which seek to relieve the Trustee of his obligations to make initial disclosures under Federal Rule 26(a)(1) – may result in the Court unfairly limiting intervenors' standing because they simply did not possess sufficient information to state the full range of possible claims and/or defenses at the time of intervention.

Thus, additional clarification would not only be helpful, it is also necessary to avoid lengthy disputes concerning the scope of intervention.

Accordingly, the Joint Defendants submit that any order concerning the Avoidance Defendants' permissive intervention in the Omnibus Alter Ego Actions should: (1) not curtail or limit any proper independent basis for permissive intervention that might otherwise be asserted under Federal Rule 24(b); (2) permit the Avoidance Defendants to revisit the scope of their intervention upon any amendments to the pleadings in their Avoidance Actions or upon the discovery of material facts learned during the course of their Avoidance Actions or in the Omnibus Alter Ego Actions; and (3) require that any Notice of Intervention be filed no later than sixty (60) (as opposed to the Trustee's proposed thirty (30)) days after the entry of this Court's order, so that the Avoidance Defendants may have a better opportunity to assess the nature and basis for intervention in the first instance.[9]

### H. Objection to the Litigation and Mediation Procedures Governing Mediators' Assessment of Potential Conflicts

Finally, in Section (n) of the Litigation and Mediation Procedures, the Trustee proposes that, "[u]pon notification of their assignment, the Assigned Mediator shall determine whether they have any conflicts with respect to the Mediated Claims and, in the event of a conflict, shall recuse

---

[9] Moreover, by permitting the Avoidance Defendants to intervene in the Omnibus Alter Ego Actions to dispute the Trustee's claims that the Specified Alter Ego Defendants are alter egos of and/or that they or their property are equitably or beneficially owned by the Debtor, yet maintaining his position that all of the Court's prior existing rulings that certain other entities are alter egos of and/or equitably or beneficially owned by the Debtor are effective and binding against the Avoidance Defendants, *see* Amended Procedures Motion, n.3, the Trustee is either implicitly acknowledging that his law of the case argument is meritless, or he is attempting to manufacture a peculiar environment whereby those Avoidance Defendants against whom the Trustee has alleged that transfers were made via one or more of the Specified Alter Ego Defendants are granted more rights than other Avoidance Defendants who were not on notice of and/or who were not parties to the adversary proceedings giving rise to the alter ego rulings relevant to the claims against them when those rulings were issued.  Regardless of which is the case, the Joint Defendants reserve their rights to argue in the future when these issues are ripe based on appropriate motions that (i) the Court's prior existing rulings that certain entities (*i.e.*, not the Specified Alter Ego Defendants) are alter egos of and/or equitably or beneficially owned by the Debtor are not effective and binding against the Avoidance Defendants, and (ii) the Trustee's attempt to treat Avoidance Defendants differently should not be permitted.

themself and not act in the particular mediation unless such conflict is disclosed to and expressly waived by the Mediating Parties." Mediators have a duty to disclose more than mere conflicts of interest. Their disclosure obligations require them to disclose any connection with the parties or their attorneys as well, and the Proposed Order and the Litigation and Mediation Procedures therein should so provide. *See* American Arbitration Association, American Bar Association, Association for Conflict Resolution, *Model Standards of Conduct for Mediators 2005* (the "Model Standards"), Standard III, Conflicts of Interest. Specifically, Standard III.A of the Model Standards provides, in part, "A conflict of interest can arise from . . . any relationship between a mediator and any mediation participant, whether past or present, personal or professional, that reasonably raises a question of a mediator's impartiality." Model Standard III.C requires that a mediator disclose any conflict of interest, as described in Model Standard III.A, and that the parties may waive the conflict if they choose.

The Model Standards are widely recognized in the United States as the gold standard for mediator conduct, and those standards should be required of the mediators in this case. Accordingly, the Joint Defendants propose that Section (n) of the Litigation and Mediation Procedures be revised to read: "Upon notification of their assignment, the Assigned Mediator shall determine whether they have any conflicts of interest, as described in Standard III.A of the American Arbitration Association, American Bar Association, Association for Conflict Resolution, *Model Standards of Conduct for Mediators 2005* with respect to the Mediated Claims or the participants in the mediation, and, in the event of a conflict, shall recuse themself and not act in the particular mediation unless such conflict is disclosed to and expressly waived by the Mediating Parties."

## CONCLUSION

For the foregoing reasons, the Court should sustain the Joint Defendants' Objection and grant such other relief as justice requires.

Dated: October 10, 2025

<u>THE JOINT DEFENDANTS</u>

<table>
<tr>
<td>

By: <u>/s/ Scott M. Charmoy</u>
Scott M. Charmoy (ct15889)
**CHARMOY & CHARMOY, LLC**
1465 Post Road, Suite 100
Westport, CT 06680
Tel: (203) 255-8100
Email: scottcharmoy@charmoy.com

*Counsel for Putnam's Landscaping LLC;*
*Law Office of Neil Sunkin; The Vision*
*Group dba Bang & Olufsen; Rovello*
*Electric Inc.; LaBarbiera Custom Homes*
*LLC; and Shujuan Craven nka Milne*

</td>
<td>

By: <u>/s/ Eric S. Goldstein</u>
Eric S. Goldstein (ct27195)
**SHIPMAN & GOODWIN LLP**
One Constitution Plaza
Hartford, CT 06103
Tel: (860) 251-5059
Email: egoldstein@goodwin.com

*Counsel for Anthem HealthChoice Assurance,*
*Inc. dba Empire Blue Cross Blue Shield;*
*Anthem Health Plans, Inc.; Sedgwick Realty*
*Corp.; Direct Persuasion LLC; Scarabaeus*
*Wealth Management AG n/k/a Prime Fund*
*Solutions AG; Reichard & Escalera LLC; On*
*the Spot Home Improvement, Inc.; and Triple2*
*Digital LLC*

</td>
</tr>
<tr>
<td>

By: <u>/s/ Scott M. Charmoy</u>
Scott M. Charmoy (ct15889)
**CHARMOY & CHARMOY, LLC**
1465 Post Road, Suite 100
Westport, CT 06680
Tel: (203) 255-8100
Email: scottcharmoy@charmoy.com

-and-

Sabrina L. Streusand (*pro hac vice*)
**STREUSAND, LANDON, OZBURN &**
**LEMMON, LLP**
1801 S MoPac Expressway, Suite 320
Austin, TX 787046
Tel: (512) 236-9901
Email: streusand@slollp.com

*Counsel for Cloudflare, Inc.*

</td>
<td>

By: <u>/s/ Robert E. Kaelin</u>
Robert E. Kaelin (ct11631)
**HARRIS BEACH MURTHA CULLINA**
**PLLC**
280 Trumbull Street, 12th Floor
Hartford, CT 06103
Tel: (860) 240-6000
Email: rkaelin@harrisbeachmurtha.com

-and-

By: <u>/s/ Matthew A. Pesce</u>
Matthew A. Pesce (ct31208)
**HARRIS BEACH MURTHA CULLINA**
**PLLC**
107 Elm Street
Four Stamford Plaza, 11th Floor
Stamford, CT 06902
Tel: (203) 653-5400
Email: mpesce@harrisbeachmurtha.com

</td>
</tr>
</table>

i

| | |
|---|---|
| | *Counsel for 3 Columbus Circle, LLC; Phillips Nizer LLP; ModSquad, Inc.; and Cohen Howard LLP* |
| By:  */s/ Lindsay C. Stone*<br>Lindsay C. Stone (ct31140)<br>Benjamin Gilbert (*pro hac vice*)<br>**SHEPPARD MULLIN RICHTER & HAMPTON LLP**<br>30 Rockefeller Plaza, 39th Floor<br>New York, NY 10112<br>Tel: (212) 653-8700<br>Email: lstone@sheppardmullin.com<br>           bogilbert@sheppardmullin.com<br><br>-and-<br><br>By:  */s/ Alan H. Martin*<br>Alan H. Martin (*pro hac vice*)<br>**SHEPPARD MULLIN RICHTER & HAMPTON LLP**<br>650 Town Center Drive, 10th Floor<br>Costa Mesa, CA 92626<br>Tel: (714) 513-5100<br>Email: amartin@sheppardmullin.com<br><br>*Counsel to Agora Lab, Inc.* | By:  */s/ Tracy Ellis Williams*<br>Tracy Ellis Williams (ct25137)<br>**SHIPMAN & GOODWIN LLP**<br>300 Atlantic Street, 3rd Floor<br>Stamford, CT 06901<br>Tel: (203) 324-8136<br>Email: tewilliams@goodwin.com<br><br>-and-<br><br>Scott M. Kessler (*pro hac vice*)<br>**AKERMAN LLP**<br>1251 Avenue of the Americas, 37th Floor<br>New York, NY 10020<br>Tel: (212) 880-3800<br>Email: scott.kessler@akerman.com<br><br>*Counsel for B&H Foto & Electronics Corp.* |
| By:  */s/ Anthony J. Proscia*<br>Anthony J. Proscia (ct31680)<br>**KAUFMAN DOLOWICH LLP**<br>40 Exchange Place, 20th Floor<br>New York, New York 10005<br>Tel: (212) 485-9600<br>Email: aproscia@kaufmandolowich.com<br><br>*Counsel for Yankwitt LLP; Ganfer Shore Leeds & Zauderer, LLP; Brune Law PC; and Petrillo Klein & Boxer LLP* | By:  */s/ John J. Clarke, Jr.*<br>John J. Clarke, Jr. (ct31251)<br>**DLA PIPER LLP (US)**<br>1251 Avenue of the Americas<br>New York, NY 10020<br>Tel: (212) 335-4500<br>Email: john.clarke@us.dlapiper.com<br><br>-and-<br><br>C. Kevin Kobbe (*pro hac vice*)<br>**DLA PIPER LLP (US)** |

|  | 650 South Exeter Street, Suite 1100<br>Baltimore, MD 21202<br>Tel: (410) 580-4189<br>Email: kevin.kobbe@us.dlapiper.com<br><br>*Counsel for Zeta Global Corp.* |
|---|---|
| By: */s/ Lindsay Sampson Bishop*<br>Lindsay Sampson Bishop (ct29990)<br>**K&L GATES LLP**<br>1 Congress Street<br>Boston, MA 02114<br>Tel: (617) 261-3100<br>Email: lindsay.bishop@klgates.com<br><br>-and-<br><br>By: */s/ Brian T. Peterson*<br>Brian T. Peterson (*pro hac vice*)<br>**K&L GATES LLP**<br>925 Fourth Avenue, Suite 2900<br>Seattle, WA 98104<br>Tel: (206) 623-7580<br>Email: brian.peterson@klgates.com<br><br>*Counsel for Amazon Web Services, Inc. and Amazon.com, Inc.* | By: */s/ Ronald I. Chorches*<br>Ronald I. Chorches (ct08720)<br>**Law Offices of Ronald I. Chorches, LLC**<br>82 Wolcott Hill Road, Suite 203<br>Wethersfield, CT 06109<br>Tel: (860) 563-3955<br>Email: ronchorcheslaw@sbcglobal.net<br><br>-and-<br><br>By: */s/ Darryl S. Laddin*<br>Darryl S. Laddin (*pro hac vice*)<br>Frank N. White (*pro hac vice*)<br>**Arnall Golden Gregory LLP**<br>171 17th Street, N.W. Suite 1200<br>Atlanta, GA 30363-1031<br>Tel: (404) 873-8500<br>Email: darryl.laddin@agg.com<br>        frank.white@agg.com<br><br>*Counsel for American Express Company; American Express National Bank; and American Express Travel Related Services Company, Inc.* |
| By: /s/ David M. S. Shaiken (ct02297)<br>**SHIPMAN, SHAIKEN & SCHWEFEL, LLC**<br>433 South Main Street, Suite 319<br>West Hartford, CT 06110<br>Tel: (860) 606-1703<br>Fax: (866) 431-3248<br>E-mail: david@shipmanlawct.com<br><br>*Counsel for Reach Manufacturing, LLC and Troutman Pepper Hamilton Sanders LLP* | *[Intentionally left blank]* |

# EXHIBIT A

| No. | Defendant | Adv. No. |
|---|---|---|
| 1 | Anthem HealthChoice Assurance, Inc. dba Empire Blue Cross Blue Shield | 24-05112 |
| 2 | Anthem Health Plans, Inc. | 24-05058 |
| 3 | Sedgwick Realty Corp. | 24-05222 |
| 4 | Putnam's Landscaping, LLC | 24-05211 |
| 5 | Direct Persuasion LLC | 24-05010 |
| 6 | Cloudflare, Inc. | 24-05115 |
| 7 | 3 Columbus Circle, LLC | 24-05120 |
| 8 | ModSquad, Inc. | 24-05114 |
| 9 | Agora Lab, Inc. | 24-05005 |
| 10 | American Express Company; American Express National Bank; and American Express Travel Related Services Company, Inc. | 24-05077 |
| 11 | Amazon Web Services, Inc. | 24-05006 |
| 12 | Amazon.com, Inc. | 24-05057 |
| 13 | On the Spot Home Improvement, Inc. | 24-05130 |
| 14 | Phillips Nizer LLP | 24-05047 |
| 15 | Zeta Global Corp. | 24-05092 |
| 16 | B&H Foto & Electronics, Corp. | 24-05069 |
| 17 | Scarabaeus Wealth Management AG n/k/a Prime Fund Solutions AG | 24-05250 |
| 18 | Reichard & Escalera LLC | 25-05058 |

| No. | Defendant | Adv. No. |
|-----|-----------|----------|
| 19 | Triple2 Digital LLC | 24-05037 |
| 20 | Reach Manufacturing, LLC | 24-05106 |
| 21 | Troutman Pepper Hamilton Sanders LLP | 24-05152 |
| 22 | Yankwitt LLP | 24-05184 |
| 23 | Ganfer Shore Leeds & Zauderer, LLP | 24-05181 |
| 24 | Brune Law PC | 24-05233 |
| 25 | Petrillo Klein & Boxer LLP | 24-05214 |
| 26 | Law Office of Neil Sunkin | 25-05050 |
| 27 | The Vision Group dba Bang & Olufsen | 25-05085 |
| 28 | Rovello Electric Inc. | 25-05083 |
| 29 | LaBarbiera Custom Homes, LLC | 25-05095 |
| 30 | Shujuan Craven nka Milne | 25-05095 |
| 31 | Cohen Howard LLP | 25-05049 |

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on October 10, 2025, a copy of the foregoing was filed electronically and served by first class mail, postage prepaid and/or via email on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by First Class mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/ Eric S. Goldstein
Eric S. Goldstein